James Everett Shelton
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
jeshelton595@gmail.com

Plaintiff, Pro Se

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES EVERETT SHELTON<br>316 Covered Bridge Road<br>King of Prussia, PA 19406<br><br>Plaintiff,<br><br>vs.<br><br>PARAMOUNT HOLDING COMPANY LLC<br>d/b/a PARAMOUNT PAYMENT SYSTEMS<br>841 E FAIRVIEW AVE STE 101<br>MERIDIAN, IDAHO 83642<br><br>Defendants | Civil Action<br>No. **18  2072**<br><br><br><br><br><br><br><br><br><br>Jury Trial Demanded |

## COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of PARAMOUNT HOLDING COMPANY LLC d/b/a PARAMOUNT PAYMENT SYSTEMS (hereinafter "Paramount"), in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system ("ATDS calls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

1

## I.     Introduction

1.     Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.     Plaintiff brings this action to challenge Paramount's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Paramount's and Paramount's agents' illegal telephone solicitations by which it markets its products and services by calling consumers whose numbers are listed on the National Do-Not-Call Registry utilizing automated dialing equipment, and Paramount's failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3.     The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4.     "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

5.     Plaintiff alleges that Defendant Paramount Holding Company LLC d/b/a Paramount Payment Systems (hereinafter "Paramount") placed numerous telemarketing calls to Plaintiff's cellular telephone number for the purposes of advertising Paramount's services, using an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

6.     Plaintiff never consented to receive any of these calls, two (2) of which were made after Plaintiff told Defendants to stop calling.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

2

7.     All of the claims asserted herein arise out of Paramount's illegal telephone solicitation campaign and are a common fact pattern.

## II.     Jurisdiction and Venue

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.     Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County. Plaintiff received the phone calls to his private mobile telephone number as a permanent resident of Montgomery County. Defendant Paramount conducts business in this judicial district by calling Pennsylvania consumers. Plaintiff's telephone number has a (484) Pennsylvania area code and is registered to Plaintiff's home address. Each of the Defendants has sufficient minimum contacts with this county, and otherwise purposely avail themselves of the markets in this county. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent...; it occurred when the [facsimile] was received."

## III.     Parties

10.    Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

11.    Defendant PARAMOUNT HOLDING COMPANY LLC d/b/a PARAMOUNT PAYMENT SYSTEMS ("Paramount") is an Idaho limited liability company with a registered principal address of 841 E Fairview Ave Ste 101, Meridian, Idaho 83642, which transacts

3

business in, *inter alia*, Montgomery County, Pennsylvania. Paramount Payment Systems is an Idaho registered business name which Paramount Holding Company LLC uses to transact business. Paramount is not registered to do business in the Commonwealth of Pennsylvania, however, Paramount markets and sells, *inter alia*, business loan and/or merchant cash advance services to people in Pennsylvania.

## Background
### The Telephone Consumer Protection Act

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written

consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## IV. Factual Allegations

16. Paramount provides business loans and/or "merchant cash advance" services.

17. Paramount uses telemarketing to promote its services.

18. Paramount's telemarketing efforts include calling cell phone numbers that are listed on the National Do-Not-Call registry for more than 31 days prior to the calls.

19. At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

20. Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015, more than 31 days prior to the calls.

21. On March 20, 2018 at 3:28 PM, Plaintiff received an automated call from a telephone number which displayed on Plaintiff's caller ID as 914-256-7756. Plaintiff received this call and the following calls as described below on his personal cellular telephone number, 484-626-3942.

22. Plaintiff did not recognize the caller ID, so he did not answer the call.

23. On March 22, 2018 at 11:48 AM, Plaintiff received another automated call from a telephone number which displayed on Plaintiff's caller ID as 914-256-7756, the same number which called him on March 20, 2018.

24. Upon answering the aforementioned call on March 22 at 11:48 AM, Plaintiff was transferred to and connected with an agent of Defendants, "Steve Sparks". Plaintiff heard a click and pause, followed by a machine noose and a balloon-popping sound, prior to being connected with a live human being. This is characteristic of an automated live-transfer from a computer to a human being, in which Plaintiff was connected upon answering the phone and saying "hello".

25. Plaintiff then received a scripted sales pitch about business loans and/or merchant cash advance services provided by defendants, Paramount Payment Systems.

26. As a result of this telemarketing call, "Steve Sparks", a senior loan officer at Paramount, sent Plaintiff an e-mail from ssparks@paramountpayment.com at 12:02 PM on March 22, 2018, trying to get Plaintiff to do business with Paramount and/or borrow money or take out a merchant cash advance from Defendants.

27. During that call, Plaintiff took steps to ascertain the identity of the caller and feigned interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with

6

their company information. However, Plaintiff never consented to receiving any additional telemarketing calls.

28. Despite not giving Paramount consent or permission (verbally or in writing) to call back, Plaintiff received another call from the same caller ID, 914-256-7756 at 2:56 PM on the same day, March 22, 2018.

29. On the following day, March 23, 2018, Plaintiff received yet another call from a telephone number which displayed on Plaintiff's caller ID as 914-256-7756, the same number which called him on March 20, 2018 and March 22, 2018, which Plaintiff identified previously as being the number used by Paramount to solicit him. Plaintiff was not interested, so he did not answer the call.

30. Based on the fact that the caller ID 914-256-7756 was used to make an automated call during the call on March 22, 2018 at 11:48 AM, Plaintiff alleges that every call using this caller ID was made using automated equipment.

31. Plaintiff attempted to call 914-256-7756 on May 16, 2018, however, Plaintiff discovered that this was not a working number. This is further evidence that defendants used automated equipment to "spoof" their caller ID using a robodialer.

32. On or about April 3, 2018, Plaintiff researched Defendants to find out the identities of the owners of Paramount. Plaintiff learned that an individual named Jared McDaniel is one of Paramount's owners and/or corporate officers. According to the Idaho Secretary of State's website, McDaniel is one of Paramount's signing parties and/or representatives. According to Paramount's website, http://paramount.p4dashboard.com, Jared McDaniel is listed as the CFO of Paramount and his mobile phone number is listed as 208-794-8888.[2]

---

[2] http://paramount.p4dashboard.com/303/Jared.McDaniel

7

33. Upon information and belief, at all times material hereto, Jared McDaniel was employed with Defendant Paramount.

34. On April 3, 2018 at 6:20 PM, Plaintiff called Jared McDaniel at 208-794-8888. Mr. McDaniel said "Paramount, this is Jared". Plaintiff told Mr. McDaniel his name and briefly explained that he received several telemarketing calls from Paramount, and that he intended to sue Paramount for violating the TCPA. Mr. McDaniel refused to put Plaintiff's number on the do-not-call list. Instead, Mr. McDaniel told Plaintiff to "go ahead and sue us". Mr. McDaniel confirmed his verbal comment in writing on May 15, 2018 in an e-mail, and did not dispute Plaintiff's assertion that he had told Mr. McDaniel and Paramount to stop calling on April 3.

35. This brief phone call constituted notice to Paramount that Plaintiff did not want to receive any more telemarketing calls, and constituted a request for Plaintiff's number to be placed on Paramount's internal Do-Not-Call list.

36. Despite Plaintiff's conversation with Mr. McDaniel informing Paramount not to call again, Paramount called Plaintiff two more times.

37. The following day, April 4, 2018, at 3:22 PM, Plaintiff received another call from a telephone number which displayed on Plaintiff's caller ID as 208-906-4182. Upon information and belief, this call was manually dialed and was not an ATDS call.

38. Upon answering, Plaintiff spoke with a representative from Paramount and received a scripted sales pitch about business loans and/or merchant cash advance services. Plaintiff was not interested, so he did not give Paramount permission to call back.

39. On April 9, 2018 at 12:39 PM PM, Plaintiff received another call from a telephone number which displayed on Plaintiff's caller ID as 208-425-1736. Upon information and belief, this call was manually dialed and was not an ATDS call.

8

40. Plaintiff received a scripted sales pitch about business loans and/or merchant cash advance services from a Paramount agent. Plaintiff was not interested, so he did not give Paramount permission to call back.

41. At no time did Plaintiff provide his consent to receive any calls from Paramount and/or its agents.

42. Prior to these unsolicited calls, the Plaintiff has never done any business with Paramount and Plaintiff never provided Paramount with his cellular telephone number.

43. Paramount did not have the Plaintiff's prior express written consent to make these calls.

44. In fact, before filing this lawsuit, the Plaintiff wrote to Paramount on May 13, 2018 asking if they had his prior express written consent to make the calls, but Paramount did not provide any evidence of consent.

45. Instead, Paramount sent the Plaintiff documents from 2013-2014 involving a completely separate entity located in Indiana that had previously done business with Paramount, and whose owner also was named "James". Plaintiff notified Paramount that this was the wrong person and re-iterated his request to receive any purported evidence of "consent" to receive telemarketing calls, but Paramount never provided any evidence that Plaintiff consented to receive calls.

46. Paramount admitted in an e-mail to placing at least two (2) calls to Plaintiff, including one on April 9, 2018, which was after Plaintiff told Paramount to stop calling.

47. Plaintiff also requested in his e-mail to have his number placed on Paramount's internal Do-Not-Call list, and requested to receive a copy of Paramount's internal company Do-Not-Call policy.

48. On May 13 and May 15, 2018, Plaintiff wrote to Paramount and asked for his number to be placed on the Do-Not-Call list repeatedly.

49. Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite a written e-mail request and notice of Plaintiff's intent to file a formal claim.

50. Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

51. Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

52. To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Paramount inquiring about the calls before filing this lawsuit.

53. Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

54. Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

55. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

56. Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

57. In summary, Plaintiff received a total of four (4) ATDS calls on March 20, March 22 (twice), and March 23, six (6) sales calls made to a cell phone number listed on the National Do-Not-Call Registry on March 20, March 22 (twice), March 23, April 4, and April 9. Defendants refused and/or failed to put Plaintiff's number on the Defendant's internal Do-Not-Call list four (4) times, on April 3, April 4, April 9, May 13, and May 15, 2018. Defendants failed to provide a copy of Defendants' internal Do-Not-Call Policy on May 13, 2018.

## Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

58. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

59. As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

61. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

62. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

63. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

64. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

65. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

66. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

67. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

68. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

69. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

70. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

71. As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

72. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

73. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

74. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

75. As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

76. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

77. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## WHEREFORE, Plaintiff prays for relief against defendants, as follows:
### V. Prayer for Relief

On Causes of Action 1-8:

    1. For awards of $500 for each negligent violation as set forth in actions 1-6.

14

2. For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing; Total statutory damages: **$22,500** (Six counts of "Sales call to a number registered on the National Do-Not-Call Registry", four counts each of "ATDS call", four counts of "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list", and one count of "Failure to provide a copy of Defendant's Do-Not-Call Policy", with treble damages for each.)

4. Prejudgment interest at the maximum legal rate;

5. Costs of suit herein incurred; and

6. All such other and further relief as the Court deems proper.

### VI. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 17, 2018

*James E. Shelton*

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

15

## **VERIFICATION**

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.

Dated: May 17, 2018

*James E. Shelton*

JAMES EVERETT SHELTON